# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CONTINENTAL GENERAL INSURANCE COMPANY,**

         **Plaintiff,**

v.                                                                                  Case No: 6:23-cv-2149-PGB-DCI

**CAROL GARDINA and GEORGE GARDINA,**

         **Defendants.**
_____/

## ORDER

This cause comes before the Court on Defendants Carol Gardina ("**Ms. Gardina**") and George Gardina's ("**Mr. Gardina**")[1] Motion to Dismiss the Amended Complaint. (Doc. 39 (the "**Motion**")). Plaintiff Continental General Insurance Company ("**Plaintiff**") has responded in opposition. (Doc. 40 (the "**Response**")). Further, Plaintiff and Defendants have each filed a Notice of Supplemental Authority. (Docs. 43, 44). Upon consideration, the Motion is due to be denied.

---

[1] Collectively, Ms. Gardina and Mr. Gardina will be referred to as the "Defendants" or the "Gardinas."

I. **BACKGROUND**[2]

Through this action, the Plaintiff insurance company brings a series of claims related to what it describes as the Gardinas' decades-long "brazen scheme to collect more than $1.9 million in long-term care insurance benefits" to which they were not entitled. (Doc. 35, ¶ 1). Ms. Gardina purchased a long-term care insurance policy (the "**Subject Policy**") from Plaintiff's predecessor in interest in January 2002. (*Id.* ¶ 2). Less than three months later, Ms. Gardina allegedly suffered a subarachnoid hemorrhage. (*Id.*).

With Mr. Gardina's assistance, in August 2002, Ms. Gardina submitted a claim for benefits under the Subject Policy. (*Id.*). Since the time Ms. Gardina submitted this claim, the Gardinas have "consistently . . . represented to [Plaintiff] that [Ms.] Gardina's subarachnoid hemorrhage left her physically incapacitated, unable to perform typical activities of daily living, and cognitively impaired." (*Id.* ¶ 4). As a result of these representations, Plaintiff found that Ms. Gardina was entitled to benefits under the Subject Policy and continued to pay claims benefits to Ms. Gardina for the ensuing two decades. (*Id.* ¶¶ 4–5).

However, in 2023, Plaintiff learned that a civil lawsuit, *Prudential Insurance Co. of America v. Gardina*, No. 6:23-cv-1125-JSS-DCI (filed June 14, 2023) (the "**Prudential Suit**"), had been filed against the Gardinas by another insurance company. (*Id.* ¶¶ 71–72). Therein, Prudential Insurance Company of

---

[2] This account of the facts comes from Plaintiff's Amended Complaint. (Doc. 35 (the "**FAC**")). The Court accepts well-pled factual allegations as true when considering motions to dismiss. *Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

2

America ("**Prudential**") accused the Gardinas of fraudulently collecting benefits under a long-term care insurance policy that had been issued by Prudential in February 2002 (the "**Prudential Policy**"). (*Id.* ¶ 73). Specifically, Prudential alleged that Ms. Gardina had been receiving claims payments under the Prudential Policy stemming from her April 2002 subarachnoid hemorrhage. (*Id.* ¶ 74). Since the time of the hemorrhage, the Gardinas represented to Prudential that this medical event had left Ms. Gardina "physically incapacitated and severely cognitively impaired." (*Id.*). Notably, Prudential's surveillance of Ms. Gardina contradicted these representations, and found Ms. Gardina performing activities such as driving a large truck without assistance, securing a boat trailer, and carrying lumber. (*See id.* ¶ 77). As a result, Prudential brought claims against the Gardinas for fraudulent misrepresentation, fraudulent concealment, declaratory judgments, and civil conspiracy. *Prudential Ins. Co. of Am. v. Gardina*, No. 6:23-cv-1125-JSS-DCI, 2024 WL 2304572, at *1 (M.D. Fla. May 16, 2024).

Upon learning of the Prudential Suit, Plaintiff conducted its own investigation and determined that the Gardinas had made various misrepresentations to Plaintiff with regard to the Subject Policy.[3] (*See* Doc. 35, ¶¶ 84–144). Plaintiff alleges these misrepresentations caused Ms. Gardina to receive benefits under the Subject Policy to which she was not entitled. (*E.g.*, *id.* ¶¶ 3–6).

---

[3] For example, Plaintiff asserts that Ms. Gardina has submitted fraudulent invoices to Plaintiff; has falsely presented herself as severely physically and mentally incapacitated during benefit eligibility assessments; has represented that she was receiving treatment from a third-party healthcare agency when the relevant entity is owned by Mr. Gardina; and has represented that she was receiving treatment in Canada when she was actually in Florida. (Doc. 35, ¶¶ 146, 149, 150–51).

3

Accordingly, in the operative FAC, Plaintiff brings claims against the Gardinas for fraudulent misrepresentation (Count I), fraudulent concealment (Count II), unjust enrichment (Count III), declaratory judgments (Counts IV and V)[4], and civil conspiracy (Count VI). (*Id.* ¶¶ 145–95). Now, the Gardinas move to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6).[5] (Doc. 39).

## II.  LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484

---

[4]  The Court notes that Plaintiff has brought each of these counts against both Ms. Gardina and Mr. Gardina except for Counts IV and V for declaratory judgments, which Plaintiff has brought against Ms. Gardina only.

[5]  The Gardinas also cite to Federal Rules of Civil Procedure 8(e)(1) and 10(b) as additional bases for their Motion. (Doc. 39, p. 1). However, Rule 8(e)(1) does not exist. *See* FED. R. CIV. P. 8(e). Further, the Gardinas fail to reference either of these provisions outside of the introductory paragraph of the Motion, and it is not clear to the Court how Rule 10(b) would apply to the arguments raised in the Motion. (*See generally* Doc. 39); FED. R. CIV. P. 10(b). As a result, the Court limits its analysis to the Gardinas' arguments for dismissal of the FAC pursuant to Rule 12(b)(6). *See* FED. R. CIV. P. 12(b)(6).

(11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

## III. DISCUSSION

In the Motion, the Gardinas argue that: (1) the FAC should be dismissed in its entirety because the Subject Policy is incontestable; (2) Plaintiff's claims against Ms. Gardina should be dismissed because they are barred by Florida's independent tort rule; and (3) Plaintiff's fraud-based claims against Ms. Gardina[6] should be

---

[6] The Court notes that the Gardinas' argument regarding *Mr. Gardina's* lack of a duty of disclosure to Plaintiff contains no citations to legal authority. (*See id.*). Thus, the Court is not obligated to address this argument, as it is deemed waived. *See W. Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017) ("It is axiomatic that arguments not supported and properly developed are deemed waived."); *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived); *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

5

dismissed because she did not owe Plaintiff a duty of disclosure. (Doc. 39). The Court addresses these arguments in turn.

### A. Incontestability of the Policy

First, the Gardinas assert that the Subject Policy became "incontestable for any reason other than nonpayment of premiums after 2 years from the date of issue" in 2002. (Doc. 39, pp. 4–5). In support, the Gardinas point to Florida Statute § 627.94076 (the "**Incontestability Statute**"), which states: "Notwithstanding the provisions of [Florida Statute §] 627.607, each long-term care insurance policy shall provide that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of 2 years after its date of issue except for nonpayment of premiums." (Doc. 39, p. 5).

Even assuming the Gardinas' interpretation of the Incontestability Statute is correct, their argument fails. As Plaintiff notes, the Incontestability Statute was enacted in 2006—roughly four years after the Subject Policy went into effect. (Doc. 40, p. 7 n.4); FLA. STAT. § 627.94076. Importantly, the Florida Supreme Court has explained that, when considering whether a Florida Statute applies retroactively, there is a "presumption against retroactivity."[7] *Metropolitan Dade County v. Chase Fed. Hous. Corp.*, 737 So. 2d 494, 500 (Fla. 1999). Moreover, absent express guidance in the statutory language, this presumption can be rebutted only "by clear

---

7   In the FAC, Plaintiff invokes the Court's diversity jurisdiction to establish its subject matter jurisdiction in this case. (Doc. 35, ¶ 11). "As a federal court sitting in diversity, we are required to apply the law as declared by the state's highest court." *CSX Transp., Inc. v. Trism Specialized Carriers, Inc.*, 182 F.3d 788, 790 (11th Cir. 1999) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

6

evidence of legislative intent." *Id.* (citing *Arrow Air, Inc. v. Walsh*, 645 So. 2d 422, 425 (Fla. 1994)).

Here, the plain language of the Incontestability Statute is silent as to whether it applies retroactively. *See* FLA. STAT. § 627.94076. Moreover, if there is evidence that the Florida Legislature intended for the Incontestability Statute to apply retroactively, the Gardinas fail to present that evidence to the Court. (*See* Doc. 39, pp. 4–6). Absent such evidence, the Court cannot find that the Incontestability Statute acts to bar Plaintiff's claims.[8]

### B.     Florida's[9] Independent Tort Rule

The independent tort rule holds that "[w]hen . . . a contract has been breached, a tort action lies only for acts independent of those acts establishing the contract's breach." *Peebles v. Puig*, 223 So. 3d 1065, 1069 (Fla. 3d DCA 2017) (citing *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994)). Of relevance, a related principle known as the economic loss rule holds that "'a tort action is prohibited if the only damages suffered are economic losses' (i.e., where there is no personal injury or property damage)." *Inspirations Nev. LLC v.*

---

[8] The Court also notes that the Gardinas raised an identical argument in their motion to dismiss the Prudential Suit. *Prudential*, 2024 WL 2304572, at *3. Like the instant Court, the *Prudential* court rejected this argument and found that the Incontestability Statute did not bar Prudential's claims even though the Prudential Policy—like the Subject Policy—went into effect in 2002. *Id.*

[9] Neither the FAC nor the parties' briefing of the instant Motion expressly state that Florida law applies to Plaintiff's state law claims. (*See* Docs. 35, 39, 40). However, the parties' arguments clearly rest on this assumption. (*See* Doc. 39, pp. 4–15; Doc. 40, pp. 7–19). "Because the parties presume the substantive law of Florida controls the state [law] claims, the undersigned does the same." *Open Sea Distrib. Corp. v. Artemis Distrib., LLC*, 692 F. Supp. 3d 1151, 1174–75 (M.D. Fla. 2023).

7

*Med Pro Billing, Inc.*, No. 20-CV-60268-STRAUSS, 2021 WL 2156677, at *4 (S.D. Fla. May 26, 2021) (quoting *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399, 401, 404–05 (Fla. 2013)).

Each of these rules has "spurred much debate in Florida over the last few decades." *Id.* Moreover, "[i]n 2013, the Florida Supreme Court attempted to clarify this somewhat murky area of law but arguably made certain aspects murkier." *Id.* (citing *Tiara*, 110 So. 3d at 399). In *Tiara*, the Florida Supreme Court expressly narrowed the scope of the economic loss rule, finding that it applies only to product liability cases and receding from prior rulings holding otherwise. 110 So. 3d at 407. Yet, *Tiara*'s impact on the independent tort rule has been less clear. Initially, it was uncertain whether the independent tort rule had survived the *Tiara* decision. *E.g.*, *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) (acknowledging that the "law is still somewhat unsettled in this area" but that "*Tiara* may . . . have left intact" the independent tort rule (citing 110 S. 3d at 408 (Pariente, J., concurring))). However, in the years since *Tiara*, the Eleventh Circuit and the district courts in this circuit have continued to apply Florida's independent tort rule. *Scrap King LLC v. Stericycle, Inc.*, No. 8:18-cv-733-T-35AEP, 2019 WL 11555235, at *4 (M.D. Fla. Mar. 15, 2019) (collecting cases).

Post-*Tiara*, "while the 'exact contours' of the independent tort rule 'are still unclear, the standard appears to be that 'where a breach of contract is combined with some other conduct amounting to an independent tort, the breach can be considered an independent tort under Florida law.'" *Id.* (quoting *Lamm*, 749 F.3d

8

at 947). When applying this rule to allegations involving fraud, the "alleged fraud is not separate from the performance of the contract where the misrepresentations forming the basis for the fraud also form the basis for the breach of contract claim." *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-cv-186-J-34JRK, 2018 WL 905752, at *11 (M.D. Fla. Feb. 15, 2018) (quoting *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, No. 13-61687-CIV, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014)). Put differently, where the allegations of fraud are "'inextricably intertwined' with the performance of a contract, there is no cognizable claim sounding in fraud." *Id.* (citation omitted).

In the Motion, the Gardinas argue that Plaintiff's claims raised against Ms. Gardina in all six counts[10] must be dismissed under the independent tort rule. (Doc. 39, p. 6). The Gardinas claim that Plaintiff's allegations of fraud are inextricably intertwined with Ms. Gardina's performance under the insurance contract. (*Id.* at p. 9). The Gardinas thus assert the claims essentially amount to claims for breach of contract and are forbidden under the independent tort rule. (*Id.*). Plaintiff responds by noting that it has not brought a breach of contract claim here. (Doc. 40, p. 13). Plaintiff further cites the parties' agreement that the Subject Policy fails to contain a fraud or concealment provision that would address the Gardinas' conduct. (*Id.* (citing Doc. 39, p. 2)). Plaintiff likewise notes that the

---

[10] The Court notes that Plaintiff objects to the Gardinas' characterization of Counts IV and V as torts that are susceptible to being barred under Florida's independent tort rule, as these counts arise under the Declaratory Judgment Act. (Doc. 40, p. 17). The Court need not address this discrete issue at this time, as it ultimately concludes that Plaintiff's tort claims are not barred by Florida's independent tort rule, at least at this early stage in the proceedings.

9

Gardinas' Motion fails to include "any reference to the provision of the Policy that [Ms.] Gardina believes her fraudulent scheme violated." (*Id.* at pp. 13–14).

Relevant to the latter point, the Gardinas attach to the Motion a recent Order granting a motion to dismiss two defendant insurance companies' counterclaims under similar facts to those at hand. (Doc. 39-1); *see Kuber v. Berkshire Life Ins. Co. of Am.*, No. 19-80211-CV-MIDDLEBROOKS, 2020 WL 646870, at *1 (S.D. Fla. Jan. 27, 2020). In *Kuber*, the plaintiffs Douglas Kuber ("**Mr. Kuber**") and Rebecca Kuber (collectively, the "**Kubers**") had sued the defendant insurance companies (the "**defendants**") for discontinuing payment of benefits under Mr. Kuber's disability insurance policy. 2020 WL 646870, at *1. The defendants brought multiple counterclaims rooted in their allegations that the Kubers had made fraudulent misrepresentations and omissions "regarding 'the cause of [Mr. Kuber's] disability and ability to work.'" *Id.* The defendants did not include a counterclaim for breach of the insurance contract, but instead brought multiple counterclaims against the Kubers sounding in tort. *Id.*

The court granted the Kubers' motion to dismiss the defendants' counterclaims as to Mr. Kuber, finding they were barred under California's economic loss rule. *Id.* at *2–3. The court noted that the defendants were in privity of contract with Mr. Kuber and found that the defendants' "allegations essentially amount to a claim for breach of contract." *Id.* at *2. Specifically, the court found that the Kubers' alleged misrepresentations amounted to a breach of the implied duty of good faith and fair dealing, which the United States Supreme Court has

10

held is inherent in every contract.[11] *Id.* (citing *Alabama v. North Carolina*, 560 U.S. 330, 351 (2010)).

In their Response, Plaintiffs distinguish *Kuber*, emphasizing that the case was decided under California's economic loss rule. (Doc. 40, p. 15 n.12). Plaintiffs correctly note that, post-*Tiara*, Florida's economic loss rule no longer bars claims falling outside of the products liability arena. (*Id.*). Further, through their Notice of Supplemental Authority, Plaintiffs also highlight that, while the instant Motion remained pending, the *Prudential* court rejected precisely the same argument raised by the Gardinas in their motion to dismiss the Prudential Suit. (Doc. 43); *Prudential*, 2024 WL 2304572, at *3–4. Therein, the court determined that, "[c]onsidering the allegations in the Complaint,"—allegations that are closely related to those at issue here—"[Prudential] has pled claims that are separate and distinct from any breach of contract." *Prudential*, 2024 WL 2304572, at *4. As a result, the court determined that Florida's independent tort rule did not bar Prudential's fraud-based claims. *See id.*

Plaintiff's points are well-taken. Viewing the allegations in the light most favorable to Plaintiff, and "resolv[ing] any doubts as to the sufficiency of the complaint in the plaintiff's favor," as the Court must do at this stage in the proceedings, the Court finds that Counts I through VI state plausible claims against

---

[11] The *Kuber* court also noted that "[t]he California Court of Appeals has echoed this rule, stating that "it has long been recognized in California that '[t]here is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other party to receive the benefits of the agreement.'" 2020 WL 646870 at *2 (quoting *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 2 P.3d 1, 8 (Cal. 2000)).

11

Ms. Gardina independent from the insurance contract. *Hunnings*, 29 F.3d at 1484; *see also Iqbal*, 556 U.S. at 678–79. Consequently, the Gardinas' request that the Court dismiss these counts as to Ms. Gardina are denied, and Plaintiff may proceed to discovery on the relevant claims.

However, the Court also acknowledges that this case presents a unique set of facts set in an uncertain legal landscape. *See Inspirations Nev. LLC*, 2021 WL 2156677, at *4 (describing the ambiguity surrounding Florida's independent tort rule post-*Tiara*).[12] The Court further notes that Plaintiff has requested leave to amend the FAC to add "claims for breach of contract and/or violations of the implied covenant of good faith and fair dealing" should this Court find the independent tort rule bars Plaintiff's claims against Ms. Gardina.[13] As a result of the foregoing considerations, and in an abundance of caution, the Court finds that Plaintiff may proceed on alternative theories of liability in this case. The Court

---

[12] Rather than clarifying matters, the *Kuber* case further muddies the waters. For example, while the *Kuber* court relied upon California's economic loss rule in reaching its holding, and while Florida's economic loss rule clearly does not apply to the instant action, some of the concepts relied upon by the *Kuber* court overlap with concepts embodied in Florida law, including Florida's independent tort rule. *See, e.g.*, discussion *supra* pp. 9–10; *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (Fla. 1999) (noting that "[u]nder Florida law, the implied covenant of good faith and fair dealing is part of every contract" (citing *County of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1050 (Fla. 1997))). Yet, another case arising under California law proceeded to trial on remarkably similar facts to both *Kuber* and the instant action. *See generally Lincoln Benefit Life Co. v. Dallal*, 520 F. Supp. 3d 1237 (C.D. Cal. 2021). The district court's findings in that case—including the court's use of its equitable powers to void the insurance contract in favor of the plaintiff insurance company—were later affirmed by the Ninth Circuit. *Lincoln Benefit Life Ins. Co. v. Dallal*, No. 21-55152, 2022 WL 605709, at *3 (9th Cir. Mar. 1, 2022).

[13] Simultaneous with the filing of its Response to the instant Motion, Plaintiff filed a Motion for Relief in the Alternative (Doc. 41) wherein it requested the described relief. A few days later, the Court denied the aforementioned Motion without prejudice on procedural grounds. (Doc. 42). Plaintiff renewed its request for relief in the alternative in its Response to the instant Motion. (Doc. 40, p. 18).

therefore provides Plaintiff leave to file a second amended complaint setting forth its proposed contract-based claims in the alternative to its tort-based claims.[14] (*See* Doc. 41; Doc. 40, p. 18).

### C. Duty of Disclosure

Interspersed in the Gardinas' arguments under Florida's independent tort rule are related arguments regarding Ms. Gardina's lack of a duty of disclosure to Plaintiff. (Doc. 39, pp. 10, 13–14). Here, the Gardinas assert that Plaintiff has failed to adequately allege any duty of disclosure owed by Ms. Gardina to Plaintiff outside of the contractual relationship,[15] which the Gardinas assert is a required element of Plaintiffs' fraud-based claims. (*Id.*). It is unclear precisely which claims the Gardinas seek to target through these arguments, but the Gardinas specifically reference the claims against Ms. Gardina raised in Count I (fraudulent misrepresentation), Count II (fraudulent concealment), and Counts IV and V (declaratory judgments). (*Id.*). The Court thus addresses the Gardinas' arguments as to each of these counts.

---

[14] Assuming Plaintiff elects to amend the FAC and Plaintiff's tort and contract theories both remain viable by the time of trial, Plaintiff may proceed to trial on both theories. Should this occur, the jury instructions in this matter will clarify those damages that are available under each theory. Further, the jury will complete an interrogatory verdict form requiring it to delineate precisely how it arrives at its verdict. Thus, should the Eleventh Circuit ultimately find that some portion of the jury's verdict in this case offends the law, it can simply vacate that part of the verdict without necessitating a new trial.

[15] In Count II (fraudulent concealment), Plaintiff expressly alleges that "the Gardinas had a duty to disclose any and all material facts regarding [Ms.] Gardina's eligibility for benefits" based upon the parties' "contractual relationship." (Doc. 35, ¶ 163). However, in the Response, Plaintiff cites to a criminal statute as a source of Ms. Gardina's duty of disclosure. (Doc. 40, p. 13 n.10 (discussing FLA. STAT. § 817.234(1)(a)(1)–(2))). Because the Court finds that the allegations adequately allege a duty of disclosure for the reasons described herein, the Court need not reach whether a duty of disclosure was created by the cited criminal statute.

13

To state a claim for fraudulent misrepresentation under Florida law, a plaintiff need not allege that the defendant owed the plaintiff any particular duty of disclosure.[16] Instead, a plaintiff must simply allege the following four elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Godelia v. Doe 1*, 881 F.3d 1309, 1321 (11th Cir. 2018) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (emphasis removed)). Consequently, the Gardinas' argument for the Court to dismiss Count I against Ms. Gardina for the lack of a duty of disclosure to Plaintiff fails.

By contrast, a plaintiff who seeks to state a claim for fraudulent concealment under Florida law is required to allege the existence of a duty to disclose the concealed facts. *Gutter v. Wunker*, 631 So. 2d 1117, 1118–19 (Fla. 4th DCA 1994) (setting forth the elements of a fraudulent misrepresentation claim and explaining that "[a] defendant's knowing *concealment or nondisclosure* of a material fact *may also* support an action for fraud *where there is a duty to disclose*" (citations omitted) (emphasis added)). Importantly, however, "where a party in an arm's length transaction undertakes to disclose information, all material facts must be disclosed." *Id.* (citing *Vokes v. Arthur Murray, Inc.*, 212 So. 2d 906 (Fla. 2d DCA

---

[16] Although the Gardinas represent that plaintiffs must allege a duty of disclosure as an element of their fraudulent misrepresentation claim, none of the sources cited by the Gardinas support this contention. (Doc. 39, p. 10); *see Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001) (concerning securities fraud); *Kaplan v. Regions Bank*, No. 8:17-cv-2701-CEH-CPT, 2023 WL 2610155, at *6 (M.D. Fla. March 23, 2023) (concerning fraudulent concealment); *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015) (same).

1968)); *see also Open Sea*, 692 F. Supp. 3d at 1199 (explaining that, under Florida law, "[a] duty to disclose may arise where a party undertakes to disclose certain facts, such that the party must then disclose the entire truth known to him. . . . For example, providing the plaintiff with documents defining insurance coverage while failing to provide the plaintiff with documents stating exclusions to that coverage is tantamount to fraud by omission" (internal citation and quotation marks omitted)).

Here, Ms. Gardina undertook to disclose information regarding her health to Plaintiff so that it could determine her eligibility for benefits under the Subject Policy. (*E.g.*, Doc. 35, ¶¶ 2–6, 67–70). Over more than two decades, the Gardinas made representations with regard to Ms. Gardina's mental and physical health and her ability to perform activities of daily living, which where relevant to such eligibility. (*E.g.*, *id.*). As a result, Ms. Gardina undertook a duty to disclose to Plaintiff all material facts as to her mental and physical health, despite the arms-length nature of the parties' relationship. *See Gutter*, 631 So. 2d at 1118–19; *see also Prudential Ins. Co. of Am. v. Gardina*, 6:23-cv-1125-JSS-DCI, 2024 WL 5145914, at *6 (M.D. Fla. Dec. 17, 2024) ("Since [the Gardinas] undertook to disclose some information that Plaintiff does not dispute as accurate regarding [Ms.] Gardina's 2002 brain hemorrhage and aneurysm, they had an ongoing duty to disclose all material facts about [Ms.] Gardina's health."). Thus, the Gardinas' argument for dismissal of Plaintiff's fraudulent concealment claim against Ms. Gardina (Count II) is denied.

The Gardinas likewise argue that Plaintiff's declaratory judgment counts (Counts IV and V) must be dismissed for want of duty. (Doc. 39, pp. 13–14). Here, the Gardinas reframe Plaintiff's declaratory judgment counts as claims for "equitable fraud," then argue such claims fail since "Florida law is clear" that the parties' contractual relationship "places the parties in an adversarial rather than a fiduciary posture." (*Id.* (citation omitted)). However, even assuming Plaintiff's declaratory judgment claims can be recast as claims for equitable fraud, this argument fails for the same reason as the Gardinas' argument as to Plaintiff's fraudulent concealment claim. *See Gutter*, 631 So. 2d at 1118–19; *Vokes*, 212 So. 2d at 909 (noting that where parties deal "at arm's[-]length with no inequities or inherently unfair practices employed, the [c]ourts will in general 'leave the parties where they find themselves,'" but in the presence of such unfair practices, this general rule will not "bar[] the equitable arm of the court."). Thus, the Gardinas' argument as to Counts IV and V are without merit.

## IV. CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss the Amended Complaint. (Doc. 39) is **DENIED**;

2. However, on or before **April 10, 2025**, Plaintiff may file a second amended complaint setting forth Plaintiff's proposed claims for

16

      breach of contract and/or violations of the implied covenant of good faith and fair dealing as an alternative theory of liability.

3. Defendants shall file their Answer to Plaintiff's Amended Complaint (Doc. 35)—or shall respond to Plaintiff's second amended complaint, should Plaintiff elect to amend its allegations—on or before **April 24, 2025**.

**DONE AND ORDERED** in Orlando, Florida on March 27, 2025.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties